**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JEFFERY MACCHIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-CV-398-PPS |
| | ) | |
| LANDLINE TRANS, LLC and TAMAS | ) | |
| ROSENBERGER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case involves a serious motor vehicle accident in which a pickup truck being driven by Plaintiff Jeffery Macchia collided with a truck being driven by defendant Tamas Rosenberger while he was employed by defendant Landline Trans, LLC. Defendants now seek to exclude Macchia's three expert witnesses. Because all three experts are treating doctors and Macchia's disclosure met the requirements of Rule 26, Defendants motion will be DENIED.

## Background

The accident in question occurred on November 1, 2020, at an intersection in Merrillville, Indiana. At the time of the crash, Rosenberger worked for Defendant Landline Trans, LLC. Macchia alleges that Defendant Rosenberger ignored a red light, entered the intersection, and caused a collision between Rosenberger's tractor trailer semi-truck and Macchia's vehicle. [DE 4 at ¶6.] Macchia tells me he suffered a fractured

1

sternum and a hernia of his right groin because of the collision. [*Id*. at ¶11.] He also claims to have sustained permanent brain damage from the accident.

After the crash, Macchia sought treatment from three doctors: (1) surgeon Dr. John Patterson; (2) neurologist Dr. Richard Cristea; and (3) neuropsychologist Dr. Jeri Morris. Before getting into the substance of the pending motion to exclude all three doctors from testifying, I'll first lay out the background facts.  That has proven to be a bit of challenge. This is because I was surprised to learn, after digging into the case, that none of the experts were ever deposed.  So, in trying to discern the extent of the treatment, I have had to rely principally on nothing more than the cold medical records.

*Dr. Patterson*

After meeting with Macchia on March 2, 2021, [DE 60-9 at 3 – 4] and April 12, 2021, [*id*. at 11] Dr. Patterson recommended surgery to repair Macchia's hernia. It appears that Dr. Patterson performed the surgery on April 23, 2021, and Macchia met again for post-operative consultation with Dr. Patterson on April 29, 2021, May 13, 2021, and May 26, 2022. [*Id*. at 12–16.] Including the surgery, Dr. Patterson appears to have met with Macchia on at least six occasions.

Dr. Patterson on May 18, 2023, prepared a response to a note from Macchia's attorneys in which Dr. Patterson answered three questions related to the cause and scope of the alleged injuries. [*See* DE 60-7.] Dr. Patterson wrote: "it is very likely that hernia was caused by the accident" and that Macchia continued to have "prolonged postoperative pain related to the hernia but also likely pain related to musculoskeletal

changes of the pelvis and hip that are causing strain and ultimately pain along the inguinal ligament-hence pain in the area of the [hernia repair]." [*Id.*]

*Dr. Cristea*

According to medical records, Dr. Cristea first saw Macchia on October 27, 2022. [DE 60-6 at 8]. During that visit, Dr. Cristea noted that Macchia's cognitive complaints onset after the November 2020 crash and ["i]t appears this was never addressed. No interim trauma reported as an alternative explanation." [*Id.*] Dr. Cristea continued to see Macchia on November 22, 2022, [*id.* at 38–41] July 17, 2023, [*id.* at 34–37] September 20, 2023, [*id.* at 30–33], and November 13, 2023 [*id.* at 26–29]. According to Macchia, he met with Dr. Cristea on at least seven occasions.

Dr. Cristea on June 8, 2023, prepared a response to a note from Macchia's attorneys in which Dr. Cristea answered three questions related to the cause and scope of Macchia's alleged brain injuries. [*See* DE 60-4.] Dr. Cristea wrote: "I am of the opinion that Mr. Macchia suffered a traumatic brain injury as a result of the motor vehicle accident that occurred in November 2020." [*Id.*] Dr. Cristea cited the neuropsychological testing completed in January 2023 by Dr. Morris as "consistent with the permanent residuals of his traumatic brain injury." [*Id.*] Dr. Cristea added that he was "of the opinion that the residuals of Mr. Macchia's traumatic brain injury are chronic and permanent." [*Id.*]

*Dr. Morris*

Dr. Morris conducted an evaluation of Mr. Macchia on January 24, 2023, upon a referral from his neurologist, Dr. Cristea. [*See* DE 60-1.] Dr. Morris noted in her report

that Macchia had complained of "significant memory problems", anxiety, irritability, sadness, and difficulty focusing since the accident. [*Id*. at 1.] Dr. Morris documented numerous cognitive tests that she conducted during her assessment of Macchia. [*Id*. at 1–3.] Dr. Morris commented on the results of these evaluations, which she noted demonstrated deficits in problem solving and included test scores that were within the first percentile for memory recall of new information. [*Id*. at 2.] Other test results yielded average or below average scores for verbal, perceptual reasoning, working memory, and processing speed subtests. [*Id*. at 2–3.] Dr. Morris concluded that "[t]he results of the neuropsychological evaluation are consistent with significant cognitive problems as a consequence of the motor vehicle accident on November 1, 2020." [*Id*. at 4.] The January 2023 evaluation appears to be the sole occasion that Dr. Morris met with Macchia.

In response to Defendants' interrogatories, Macchia named all three doctors as treating doctors who he intended to call as expert witnesses:

> . . . [A]bout their care and treatment of Jeffery, their diagnosis and prognosis, the nature and extent of Jeffery's injuries, that Jeffery's injuries are permanent, Jeffery's future care and treatment and related costs, the fact that Jeffery's injuries were caused by the crash at issue, and that Jeffery's care and treatment and charges were reasonable and necessary.

[DE 56-4 at 11.] Macchia first provided Dr. Morris' report to Defendants via email on May 10, 2023. [DE 60-10.] Then a couple weeks later, Macchia filed a motion requesting to extend the expert witness deadline that listed Drs. Patterson, Cristea, and Morris as expert witnesses and that attached Drs. Morris' and Patterson's reports. [DE 29 at Ex. A, Ex. B.] On June 26, 2023, Macchia provided Defendants with Dr. Cristea's report (as

well as reproduced copies of Drs. Morris' and Patterson's reports). [DE 60-11.] On July 31, 2023, Macchia provided Defendants with the curriculum vitae for all three doctors. [DE 60-12.]

In the motion before me now, Defendants allege that Macchia's disclosures do not satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2), which governs the disclosure of expert testimony. I will discuss the meat of Defendants' arguments in the analysis that follows, but in short Defendants argue that the doctors failed to provide full expert reports that satisfy Rule 26(a)(2)(B) because their opinions go beyond their treatment-related observations. Defendants also allege that Dr. Morris' report fails to satisfy the foundation requirements of Federal Rule of Evidence 702 and *Daubert*. Finally, and in the alternative, Defendants assert that even if I determined that Drs. Cristea and Patterson were treating physicians under Rule 26(a)(2)(C), their reports still did not satisfy the requirements of that subsection.

## Legal Standard

Parties are required to disclose "to the other parties the identify of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). There are two categories of expert witnesses under Rule 26(a)(2). First, there are those experts who are required to prepare a report. For this category of experts, here's what the rule requires:

> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the *witness is one retained or specially employed to provide expert testimony* in the case or one whose

duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). As the language of the rule makes clear, the key question to answer when deciding whether an expert needs to prepare a report is this: was the expert retained or specially employed for the purpose of providing expert testimony?

The second category of expert witness are those who do not have to provide a report. A treating physician is the paradigmatic example of an expert who falls into this category. This is because treating physicians are not retained for litigation purposes. Rather, they are seen by plaintiffs to solve a *medical* problem. Here's what the rule requires from this category of expert:

> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> > (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> > (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

The categorization into the two types of experts has not always been the case. In December 2010, Rule 26 was amended to add Rule 26(a)(2)(C) and to make explicit the differentiation between experts who were and were not required to provide a full report under Rule 26(a)(2)(B). The Advisory Committee explained the purpose of the creation of Rule 26(a)(2)(C) as follows:

> **Subdivision (a)(2)(C).** Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
>
> This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).
>
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

Fed. R. Civ. P. 26 advisory committee notes to 2010 amendment.

If a party is found to have failed to abide by Rule 26(a)'s disclosure rules for expert witnesses, Rule 37 provides the following remedy:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this

sanction, the court, on motion and after giving an opportunity to be heard:

>(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>(B) may inform the jury of the party's failure; and
>(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1).

## Discussion

With the groundwork now set for Rule 26(a)(2)(B) and 26(a)(2)(C) expert witnesses, Defendants' Motion hinges on the application of this distinction. Defendants first argue that Drs. Cristea, Patterson, and Morris should not be designated as treating physicians at all. Rather, they should all be classified as Rule 26(a)(2)(B) experts thus necessitating that a full report consistent with the rule be prepared. Their basic argument is that none of these doctors arrived at their causation opinions during their treatment of Macchia. [DE 57 at 9-13.] I think otherwise.

As noted above, the language of Rule 26 and the Advisory Committee Notes provide initial guidance on the classification of an expert witness. Rule 26(a)(2)(B) requires an expert to provide a full report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). On the other hand, the Advisory Committee Notes explain that for a Rule 26(a)(2)(C) witness, "[f]requent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." Fed. R. Civ. P. 26 advisory committee notes to 2010 amendment. But these descriptions only get us so far.

In 2010, but notably before the adoption of the 2010 Amendment to Rule 26 that added Rule 26(a)(2)(C), the Seventh Circuit considered the question of what made a treating expert an expert required to provide a report under Rule 26(a)(2)(B). In *Myers v. Nat'l R.R. Passenger Corp. (Amtrack)*, the Seventh Circuit concluded:

> . . . [T]hat a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).

619 F.3d 729, 734–35 (7th Cir. 2010) (citing Fed. R. Civ. P. 26(a)(2)(B)). The Circuit noted that the two doctors in question "prepared letters with opinions as to the causation of [plaintiff's] injuries at the request of [plaintiff's] attorney, specifically for the purpose of litigation." *Id*. at 735. In reaching this conclusion, the Circuit commented on the lack of any evidence "suggesting that either doctor previously considered or determined the cause of [plaintiff's] injuries during the course of treatment." *Id*.

Some courts have questioned whether *Myers*' holding is still good law since it was handed down prior to the addition of Rule 26(a)(2)(C) in 2010. *See Morrison v. Wal-Mart Stores, Inc.*, 321 F.R.D. 336, 339 (C.D. Ill. 2017) ("The court in [*Myers*] interpreted [the prior version of Rule 26(a)(2)] to fill a gap created by the Rule's failure to address the disclosure requirements for un-retained expert witnesses, such as treating physicians. The amended Rule now fills that gap with subsection (a)(2)(C), and the reasoning of *Meyers* and its progeny are therefore inapplicable to the amended version of the Rule."); *Valentine v. CSX Transp., Inc.*, No. 1:09-cv-01432, 2011 WL 7784120, at *3

9

(N.D. Ind. May 10, 2011) ("The Advisory Committee's Note [using 'physicians and other health care professionals' as examples of experts not required to provide written reports] appears at odds with the holding in *Meyers*."); *Coleman v. Am. Fam. Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011).

Nevertheless, the Circuit has continued to reiterate the portion of its holding from *Myers* that "'a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment,' is 'required to submit an expert report in accordance with Rule 26(a)(2).'" *Blanton v. RoundPoint Mortg. Servicing Corp.*, 825 Fed.App'x 369, 373 (7th Cir. 2020) (citation omitted); *see also E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013) (citing *Myers*' "holding that doctors who had testified about the causation of the defendant's injuries specifically for litigation purposes were required to submit expert reports."). Moreover, courts in this district continue to use *Myers* as a tool to distinguish Rule 26(a)(2) experts. *See Aurand v. Norfolk S. Ry. Co.*, 802 F.Supp.2d 950, 962–94 (N.D. Ind. 2011); *Guthrie v. Hochstetler*, No. 3:16-CV-473, 2017 WL 4760184, at *3 (N.D. Ind. Oct. 20, 2017).

Continuing to adhere to the *Myers* standard for differentiating expert witnesses seems a little odd now that Rule 26 has been amended. Based on the plain language of the rule, the question should simply be whether the expert was "retained or specially employed" for litigation. *See* Fed. R. Civ. P. 26(a)(2)(B). In most cases, when a doctor sees a patient, he is trying to solve a problem the patient is experiencing. While a doctor may have an opinion on what caused the medical problem, he would not necessarily

state that opinion in the medical records. It is therefore unsurprising that medical records do not always reveal *how* the patient's condition manifested itself. But that doesn't mean the doctor didn't arrive at the opinion during treatment; it only means he did not articulate the opinion at that time.

I do not read *Myers* so narrowly as to require a treating physician to have documented the correct magic words of causation in their contemporaneous treatment notes for there to be evidence that a doctor reached a causation opinion during treatment. Rather, as the case law suggests, I view this is a holistic inquiry into the circumstances of that doctor's treatment of the patient. I find that *Guthrie* provides a helpful perspective: "[t]reating physicians who testify as to the cause of a plaintiff's injuries often opine about matters beyond those observed during the plaintiff's medical treatment necessitating a full Rule 26(a)(2)(B) expert report." *Guthrie*, 2017 WL 4760184, at *3. "Thus, the question here is whether Plaintiff's treating physicians reached their conclusions about causation during their treatment of and based on their personal observations of Plaintiff." *Id*.

Prior to analyzing each doctor, a brief survey of cases in this district and the Southern District of Indiana is helpful to keep in mind. I will mention here a problem I noted at the outset: for reasons that are entirely unclear to me, the Defendants chose to not depose any of the three experts in this case. That really hamstrings the Defendants' argument (and the court's analysis for that matter). Defendants' arguments rely, in part, on a bare presumption that casts doubt on the ability of doctors to form opinions during the course of treatment based on a review of a patient's medical history and records and

personal observation. In *Lopez*, a court in this district expressly rejected this reasoning: "Here, defendants essentially rely only on a presumption that opinions about causation and standard of care can never be formed during a course of treatment, but they have not shown the court that any such presumption exists." *Lopez v. Jeevanandam*, No. 2:10 CV 277, 2013 WL 951179, at *4 (N.D. Ind. Mar. 12, 2013). In *Lopez*, the court noted the lack of any deposition testimony from the treating doctors at issue which indicated that their opinions had not been formed during treatment and pointed to Plaintiff's disclosures and deposition testimony indicating that causation had been formed during treatment. *Id*.

In contrast, in *Aurland v. Norfolk S. Ry. Co.*, a case that I handled, a different situation was presented. 802 F.Supp.2d 950 (N.D. Ind. 2011). There, the defendants presented deposition testimony of the treating doctors that was conclusory, did not indicate any recollection of discussions of causation during their course of treatment, and were not supported by any medical records as to plaintiff. *Id*. at 963–64. Moreover, the causation analysis involved the complicated "differential etiology" methodology to determine whether specific chemicals caused specific cancers. *Id*. at 963.

Finally, the fact that the doctors presented their causation opinions most clearly in response to Plaintiff's counsels' questions is not dispositive for Defendants. In *Valentine v. CSX Transp. Inc.*, the court disregarded a similar argument because the exchanges between the plaintiff's counsel and doctor failed, on their own, to show that the doctor developed his opinion "in anticipation of the litigation", represented "counsel's attempts to clarify and summarize" the doctors previously rendered

opinions, and the opinions were "consistent with his deposition testimony taken earlier and with his treatment notes." 2011 WL 7784120, at *3–4.

Let's start with Dr. Cristea, Macchia's neurologist. Defendants argue that Dr. Cristea's report contains conclusions on causation, that his report "was only elicited in response to counsel's questions", and that he "did not provide any facts supporting his conclusion." [DE 57 at 10.] In response, Macchia alleges that Dr. Cristea first became involved to provide care rather than to testify. Moreover, Macchia points out that he saw Dr. Cristea on at least seven occasions which shows that Dr. Cristea was not "retained or specially employed" for litigation purposes. In other words, Macchia was seeking medical advice, not a litigation expert, when he sought treatment form Dr. Cristea.

Dr. Cristea first appeared to treat Plaintiff on October 27, 2022, and during that visit Dr. Cristea commented that Plaintiff had right inguinal pain that was "[r]eportedly related to seat belt injury trauma 11/2020." [DE 56-10 at 1.] It appears that Dr. Cristea also ordered EEG and MRI brain exams during this visit because he notes reviewing the results of these tests with Plaintiff during the next visit on November 22, 2022. [*Id.*] In that next visit, Dr. Cristea noted that there was "[n]ot clear head trauma" from the November 2020 accident. The records also note that Macchia was referred to Dr. Cristea by Macchia's primary care physician because of reported memory issues and excessive agitation. [*Id.*] Dr. Cristea's records also document 2023 appointments with Macchia during which he reviewed the results of additional testing with Plaintiff, including Dr. Morris' report. [*Id.*] Dr. Cristea concluded that Plaintiff has a traumatic brain injury

"[o]nset after 11/2020 MVA. It appears this was never addressed." [*Id*.] Dr. Cristea also added that "[n]o interim trauma reported as an alternate explanation." [*Id*. at 4.]

On the whole, I view Dr. Cristea's statements as demonstrating that the reason he saw Macchia in the first place was on the recommendation of Macchia's primary care doctor (Dr. Carter); Carter thought that Macchia would benefit by seeing a neurologist. During Macchia's first appointment with Dr. Cristea, Macchia noted that was experiencing memory and agitation issues. This prompted Dr. Cristea to order several additional tests and a referral to neuropsychologist Dr. Morris. All of which resulted in Dr. Cristea concluding that Macchia's traumatic brain injury was the result of the accident. Based on this record, and in the absence of anything to the contrary from Dr. Cristea (recall, again, that he was not deposed), I am satisfied that Dr. Cristea reached his conclusions on causation during his treatment of Macchia and was not retained specifically to provide expert testimony. Nothing in the record indicates that Macchia sought out Dr. Cristea for any purpose other than treatment.

Defendants also seek to exclude Dr. Morris, the neuropsychologist who received a referral from the neurologist, Dr. Cristea. It appears that Dr. Morris performed extensive testing on Macchia and issued a report to Dr. Cristea. Defendants argue that while the report may have established that Macchia had memory problems and anxiety, it did not provide any facts to support Morris' conclusion that they were caused by the November 2020 accident. [DE 57 at 11–12.] Dr. Morris' report is very extensive. In it she notes that she reviewed Dr. Cristea's records indicating that Plaintiff suffered memory issues and headaches after the accident and appears to document her own observations

of the Plaintiff's symptoms and the onset of those symptoms. [DE 60-1 at 1.] After detailing the results of her tests, Dr. Morris concludes that the evaluation is "consistent with significant cognitive problems as a consequence of the motor vehicle accident on November 1, 2020", a conclusion she documented at the time of treatment. [*Id.* at 4.] I also find that Dr. Crista's referral of Macchia to Dr. Morris for additional testing indicates that Macchia saw Dr. Morris for treatment and to further his care with Dr. Cristea; Dr. Morris was not seen for litigation purposes. And it is clear that Dr. Morris formulated her opinion during the treatment she was rendering, not at some later point in time.

The final expert being challenged is Dr. Patterson, the surgeon who repaired Macchia's hernia a few months after the accident. Dr. Patterson has concluded the accident caused Macchia's problem that he sought to fix. Defendants argue that Dr. Patterson did not provide any evidence that he reached his conclusion on causation prior to the request from Plaintiff's counsel. [DE 57 at 11.] For starters, it is obvious to me that Macchia met with Dr. Patterson to receive treatment and not to enlist Dr. Patterson as a testifying witness. This is shown by the fact that Dr. Patterson himself performed Macchia's hernia repair surgery. And while my review of Dr. Patterson's notes does not reveal a clear conclusion on causation, his notes do show that in March 2021 he documented that Plaintiff reported a bulge in his right groin that began approximately 6 weeks earlier, which is close in time to the November 2020 accident. [DE 60-9 at 3.]  In the absence of evidence to the contrary, and again, Defendants chose

not to depose Dr. Patterson, I am satisfied that his opinions on causation were arrived at during his treatment of Macchia.

Defendants argue in the alternative that even if I were to find Drs. Cristea and Patterson to be Rule 26(a)(2)(C) witnesses, as I have now done, the two doctors' disclosures do not satisfy the requirements of this rule either. [DE 57 at 13–14.] Rule 26(a)(2)(C) requires experts to provide a "disclosure" which must state: (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The Advisory Committee Notes that accompanied the 2010 addition of Rule 26(a)(2)(C) are clear that "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed R. Civ. P. 26(a) advisory committee notes to 2010 amendment. Moreover, "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id*.

Defendants' argument focuses on the second requirement of a Rule 26(a)(2)(C) disclosure: providing "a summary of the facts and opinions to which the witness is expected to testify." My review of the disclosures confirms that this is indeed a close call, but I ultimately find that the disclosures in this case satisfy this requirement. Defendants point to the case *Kazmierski v. Bonafide Safe & Lock, Inc.*, which provided an example of facts and opinions that the court said would satisfy Rule 26(a)(2)(C):

The witness is expected to opine that the plaintiff is unable to lift more than 50 pounds and will remain unable to do so for the indefinite future. This opinion is based on the following facts: the witness diagnosed the plaintiff with three herniated discs in his back, he observed during office visits that the plaintiff is experiencing symptoms that prevent him from lifting more than 50 pounds, and he observed during office visits that the plaintiff's condition is not improving.

No. 15-C-0059, 2015 WL 10070324, at *2 (E.D. Wis. Dec. 11, 2015). Courts in this District have approved of this example. *See Washington v. Tovo*, No. 2:17-CV-128, 2018 WL 2126941, at *5 (N.D. Ind. May 9, 2018); *Rodriguez v. Am. Multi-Cinema, Inc.*, No. 2:17-CV-455, 2020 WL 8768315, at *3 (N.D. Ind. Nov. 2, 2020).

Defendants argue that Macchia's disclosures simply state the conclusion that his doctors will testify that his injuries were caused by the crash but do not state the basis or facts that support these conclusions. I disagree. In *Kazmierski*, the physician disclosure at issue provided only a high-level overview of the categories of information the physician would testify about: "[f]or example, although the plaintiff states that Dr. Running has opinions about 'the physical and emotional effects of the Plaintiff's health conditions'—i.e., states the general subject matter of his opinions—he does not state what those opinions are." 2015 WL 10070324, at *2. Drs. Cristea's and Patterson's disclosures, on the contrary, do include this information.

Dr. Cristea first provides an overview of the subject matter he will testify about, satisfying Rule 26(a)(2)(C)(i): "I am of the opinion that Mr. Macchia suffered a traumatic brain injury as a result of the motor vehicle accident that occurred in November 2020" and "I am of the opinion that the residuals of Mr. Macchia's traumatic brain injury are chronic and permanent." [DE 60-4.] But Dr. Cristea then goes on to state the basis of this

opinion, satisfying Rule 26(a)(2)(C)(ii): "the neuropsychological testing completed in January 2023" being consistent with permanent residuals of his TBI, that Macchia "continues to be easily overwhelmed due to cognitive difficulties", is aware he cannot function as he once did, and lingering social impacts of the TBI. [*Id.*]

Similarly, Dr. Patterson first states that he will testify about the Macchia's hernia, his surgery, and prolonged pain, satisfying Rule 26(a)(2)(C)(i). [DE 60-7.] Dr. Patterson then provides several summaries of fact and opinion concerning the subject of Macchia's hernia to satisfy Rule 26(a)(2)(C)(ii), including his opinion on causation based on "the patient's history of the accident with the mechanism of injury and the immediate proximity of the presentation of the hernia" and that Macchia's prolonged postoperative pain is "likely pain related to the musculoskeletal changes of the pelvis and hip that are causing strain and ultimately pain along the inguinal ligament . . . ." [*Id.*]

While perhaps not as detailed as Defendants would have liked, or the hypothetical, judicially drafted example from *Kazmierski*, I find that Drs. Cristea's and Patterson's disclosures satisfy the minimum requirements of Rule 26(a)(2)(C), which does not require "undue detail." If the Defendants thought that the opinions of the two doctors were a bit too threadbare, they could, of course, have deposed the two doctors and fleshed out the opinions. For whatever reason, they chose not to do that.

Defendants' final argument is a challenge to the foundation of Dr. Morris' testimony under Federal Rule of Evidence 702 and *Daubert*. Defendants point to case law for the proposition that neuropsychologists may opine on the causation of brain

injury upon a showing of working closely with physicians. Defendants argue that Dr.

Morris "does not provide examples of working closely with physicians or the expertise

that would be gained from similar collaborations", so therefore fails the requirements of

FRE 702 and *Daubert*. [DE 57 at 17.] In response, Plaintiffs point to *Kaepplinger v.

Michelotti* to argue that foundation for a neuropsychologist to testify about brain

damage may be satisfied by "by knowledge, training, experience, testing of plaintiff,

and review of medical records – all of which Dr. Morris did in this case." [DE 60 at 12

citing No. 17 CV 5847, 2022 WL 267886, at *17 (N.D. Ill. Jan. 28, 2022).] In their Reply,

Defendants do not respond to Plaintiff's argument and appear to abandon their

foundation challenge to Dr. Morris.

> Federal Rule of Evidence 702 provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Seventh Circuit has established a three-step test that applies

*Daubert* and Rule 702 to determine whether expert testimony is relevant and reliable:

"(1) whether the witness is qualified as an expert by knowledge, skill, experience,

training, or education; (2) whether the testimony has a reliable basis in the knowledge

and experience of the relevant discipline; and (3) whether the testimony will 'assist the

trier of fact to understand the evidence or to determine a fact in issue." *Rossi v. Groft*, No. 10 C 50240, 2013 WL 1632065, at *2 (N.D. Ill. Apr. 16, 2013) (citing *Myers v. Ill. C. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010))."

I find Macchia's argument and citation to *Kaepplinger* to be persuasive. The court in *Kaepplinger* concluded that a neuropsychologist was qualified to testify that plaintiff suffered from cognitive deficiencies and that those deficiencies were consistent with a 2015 hospital stay that was at issue "based on his knowledge, training, and experience as a neuropsychologist, his testing of [plaintiff], and his review of her medical records." 2022 WL 267886, at *17. In so holding, the court rejected the defendants' argument that the neuropsychologist's opinion improperly rested on the assumption that the plaintiff suffered a brain injury. Instead, the court looked to the "entire context and basis" for the neuropsychologist's opinion and concluded that the doctor's opinion "appears to merely be that [plaintiff's] current alleged cognitive deficiencies are consistent with an individual who experienced an extended hospital stay and suffered from the medical conditions that [plaintiff] is documented to have experienced." *Id.*

I find a similar foundation for Dr. Morris' opinion to be present here based on several factors: her CV (which demonstrates her knowledge, training, and experience as a neuropsychologist), her January 2023 report (which demonstrates her extensive cognitive testing of Plaintiff), her review of Plaintiff's medical records, and, importantly, the limited nature of Dr. Morris' opinion. Dr. Morris notes that the testing results "are consistent with significant cognitive problems as a consequence of the motor vehicle accident." [DE 60-1 at 4.] This is precisely the sort of testimony and foundation

approved by the court in *Kaepplinger*, and for those same reasons I reject Defendants'

argument that Dr. Morris' opinion lacks foundation.

## **Conclusion**

Based on the foregoing reasons, the Motion to Exclude Plaintiff's Expert

Witnesses [DE 56] is DENIED.

SO ORDERED on November 12, 2024.

<u>/s/ Philip P. Simon</u>
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT